```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Deborah A. Mitchell**

   **v.**                                               Case No. 10-cv-539-PB
                                                          Opinion No. 2012 DNH 054

**Michael J. Astrue, Commissioner,
Social Security Administration**


## MEMORANDUM AND ORDER

Deborah Mitchell seeks review of a decision by the Commissioner of the Social Security Administration denying her application for disability insurance benefits. Mitchell alleges that the decision is not supported by substantial evidence, and that the Administrative Law Judge who heard her case erred in weighing the medical opinion evidence and in assessing her credibility. For the reasons provided below, I reverse the Commissioner's decision and remand the case for further proceedings consistent with this Memorandum and Order.


## I.  BACKGROUND[1]

Mitchell filed an application for disability insurance benefits on August 8, 2008, when she was 42 years old. She

---

[1] Except where otherwise noted, the background information is taken from the parties' Joint Statement of Material Facts (Doc. No. 14). See LR 9.1(b). Citations to the administrative record are marked "Tr."

claimed that her disability began on May 10, 2007, and was due to chronic pain in her neck, right arm, and back.  Mitchell has a high school education and she worked as a school bus driver for 19 years.

Mitchell's claim was denied on October 31, 2008.  She requested a hearing, and after appearing and testifying on April 21, 2010, her claim was again denied by an Administrative Law Judge ("ALJ").  The Decision Review Board ("DRB") selected Mitchell's case for review, and affirmed the ALJ's decision on September 7, 2010.  Although the DRB indicated that the ALJ may have erred in determining that Mitchell could perform her past relevant work as a bus driver, it agreed with the ALJ's alternative finding that Mitchell could perform other work in the national economy.  Accordingly, the ALJ's decision became the final decision of the Commissioner.

**A.   Medical History**

    1.   Treatment Summary

In February 2005, Mitchell began to receive treatment for pain in her neck and back that would occasionally radiate into her arms and legs.  Her doctors noted that the pain was likely caused by the repetitive nature and poor ergonomics of her job.

Examinations revealed structural damage to her back,[2] and after prescription medications and a course of physical therapy and massage failed to afford Mitchell substantial relief, she underwent disc surgery in June 2005.

Although the surgery helped to alleviate some of her symptoms, Mitchell continued to seek treatment for pain across her back, neck, arms, and legs, as well as for problems sleeping due to the pain.  She reported that basic activities, such as sitting, standing, driving, and doing household chores, aggravated her symptoms.  Her medical treatment providers administered numerous injections, directed her to undergo physical therapy, and prescribed medications and equipment to ease her pain.  Through the date of her hearing, Mitchell continued to see her treatment providers on a regular basis.  Their notes reveal that Mitchell reported varying levels of pain, ranging from mild to moderate levels during good times to excruciating levels at the worst times.  By 2008, Mitchell was

---

[2] In May 2005, Dr. John Rescigno diagnosed Mitchell with cervical radiculopathy and thoracic myelopathy.  Cervical radiculopathy is a disease of the spinal nerve roots and nerves in the neck. Stedman's Medical Dictionary 280, 1308 (25th ed. 1990) [hereinafter Stedman's].  Thoracic myelopathy is a disturbance or disease of the spinal cord in the area between the neck and abdomen. Id. at 1013, 1595.  Through the course of her treatment, other physicians provided additional diagnoses of damage to her spinal cord and the musculature in her back.

regularly taking narcotics, such as Vicodin and Percocet, to ameliorate her pain and allow her to function.

    2.   <u>Work Limitations Noted by Treatment Providers</u>

Dr. Alison Baker and her physician's assistant, Stefanie Diamond, both of whom treated Mitchell over a period of years, would regularly note their opinions about Mitchell's current work capability on Workers' Compensation forms and other medical records. In addition to specifying certain physical limitations, they noted that Mitchell was capable of working only up to a certain number of hours per week. The number of hours would often change, depending on Mitchell's current condition, but was never greater than 30 per week.

In June 2009, William Dooley, a physical therapist, performed a functional capacity evaluation ("FCE"). He noted that Mitchell gave a full physical effort and that her subjective reports of pain and disability were reasonable and reliable. His testing showed that Mitchell's work capacity allowed for occasional sitting, standing, and walking, and that she had the ability to lift 10 pounds occasionally. She had a limited tolerance for doing work above her head and an occasional tolerance for work up to the level of her shoulder. The test results did not demonstrate an ability to perform her past work as a bus driver.

After reviewing Mr. Dooley's FCE shortly after it was performed, Dr. Baker stated her opinion that Mitchell had the capability to work for 4 hours a day, 5 days a week. Approximately 3 months later, in September 2009, Dr. Baker completed a Medical Source Statement of Ability to Do Work-Related Activities. Dr. Baker noted that Mitchell could occasionally lift and carry up to 20 pounds; could sit for 30-45 minutes at a time and up to 2 hours total in an 8-hour workday; could stand for 30-45 minutes at a time and up to 2 hours in an 8-hour workday; and could walk for 20 minutes at a time and up to 1-2 hours in an 8-hour workday. She limited Mitchell to occasional performance of various postures and manual activities. Dr. Baker also noted that Mitchell informed her that she needed to recline 3-5 times each day for 30-45 minutes and to change positions every 30-45 minutes.

The notes and forms filled out by Dr. Baker and Ms. Diamond show that their opinions of Mitchell's work capabilities did not subsequently change. In April 2010, Dr. Baker indicated that Mitchell's functional capacity remained the same as she had indicated in her June assessment, and Ms. Diamond indicated that Mitchell's functional capacity remained the same as had been set forth in the FCE.

In addition to her treating medical sources, Dr. Hugh Fairley, the consultative state agency doctor, provided an opinion concerning Mitchell's residual functional capacity ("RFC"). His analysis was conducted in October 2008, and he identified Mitchell's diagnoses as cervico-thoracic degenerative disease and myofascial pain.[3] Dr. Fairley stated that Mitchell could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. In his concluding remarks he stated, "A closed 12 month period of total disability is not seen, & light work only is recommended." (Tr. 562).

3. Self-Reporting

In a Disability Report and a Function Report, Mitchell noted that she performed a number of regular household chores, like laundry and vacuuming, but did so with difficulty and pain. These activities took much longer than they should have, and they aggravated her symptoms. Family and friends were often enlisted to help with basic chores. Although Mitchell was able to use a car at times, sometimes her symptoms left her unable to

---

[3] Cervico-thoracic refers to the neck and thorax, and the thorax is the area between the neck and abdomen. Stedman's at 280-81, 1594. Myofascial refers to the "fascia surrounding and separating muscle tissue," id. at 1016, and the fascia is a "sheet of fibrous tissue that envelops the body beneath the skin; it also encloses muscles and groups of muscles, and separates their several layers or groups," id. at 565.

drive to pick up her medication.  Her use of prescription medication made it unsafe for her to drive children.

Mitchell noted that her pain would flare up in response to certain weather conditions and activities.  She was unable to sleep through the night because of her symptoms, and would wake up several times in a typical night.  She stated that her hobbies and interests had been reading, watching TV, walking her dog, and sewing, and although she still read twice a week and watched TV daily, she could no longer walk the dog or sew.

**B.   Administrative Hearing**

   1.   Mitchell's Testimony

At the administrative hearing, Mitchell testified that she was not able to work because of daily pain, of varying intensities, in her neck, her right arm, and the middle of her back.  Although she had been prescribed Vicodin and Percocet, she continued to experience pain.  When her pain increased, she would need to recline and use ice.  When her symptoms were at their worst, she was nearly unable to get out of bed, even after taking her medication.

Mitchell discussed her regular activities, stating that she helped her 14-year-old son get ready for school in the morning.  She did simple things during the day such as emptying the dishwasher, doing laundry, making beds, and feeding her cats.

These activities were performed with breaks in between. Vacuuming especially aggravated her pain, so her husband would typically do the vacuuming for her on the weekends.  She would, however, do the vacuuming herself every week or every other week.  She would cook, but her husband and children helped her with peeling, cutting, and mashing potatoes and her husband would have to take items out of the oven for her.  She stated that her ability to drive was limited and, after 15-20 minutes behind the wheel, her pain would increase.

    Mitchell testified that her medicine caused drowsiness and that her symptoms made it generally difficult for her to focus and concentrate.  Discussing physical limitations, Mitchel asserted that she could sit for 30-45 minutes at a time and she had to constantly change positions.  She indicated her ability to stand was limited by pain and that after loading the dishwasher and cleaning a few pans, she would need to sit down or recline.  She estimated that she could stand for a couple hours out of an 8-hour day but would constantly have to change positions.  In addition to her continuous need to change positions, she would have to recline 2 to 3 times a day.  On bad days she would have to recline as many as 5 times, or else spend most of the day reclining.  On average, she estimated she reclined 3 times a day for 45 minutes.  She asserted that was

8

unable to lift more than 5 pounds frequently and 10 pounds occasionally.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ posited a number of hypotheticals to a vocational expert (VE).  In one, the ALJ asked the VE what work could be performed by an individual who could lift 15 pounds occasionally and 10 pounds frequently; could sit for an hour and a half at a time and 6 hours in an 8-hour workday; could frequently stand for a half-hour at a time, but not as much as two-thirds of the day; could occasionally walk for up to one-third of the day; could occasionally climb ladders and stairs; could occasionally reach above the shoulders for up to one-third of the day; and who did not have any limitations with regard to bending, stooping, crouching, or squatting.  The VE testified that such an individual could perform work as a mail clerk, an office helper, or a toll collector and, within the sedentary level of exertion, that person could perform the job of a charge account clerk.

In another hypothetical, the ALJ repeated the limitations of the first hypothetical with two alterations.  He reduced the individual's weight-lifting capability to 10 pounds occasionally and 5 pounds frequently, and added the restriction that the individual would need to lie down 3 to 5 times a day.  The VE

testified that such an individual would likely be unable to perform any competitive employment.

**C.   ALJ's Decision**

The ALJ found that Mitchell suffered from two severe impairments, status post fusion C5-7 with disc bulge at C4-5 and degenerative disc disease of the thoracic spine at T11-12. After determining that neither impairment met or medically equaled a listed impairment, the ALJ found that Mitchell retained the RFC to perform light work, and that Mitchell's restrictions were consistent with the restrictions noted in the first of the two hypotheticals discussed above that were posed to the VE.  In light of Mitchell's RFC and the VE's testimony, the ALJ concluded that she could perform her past relevant work as a school bus driver, as well as other work as a mail clerk, office helper, or toll clerk.  Accordingly, the ALJ determined that Mitchell was not disabled.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  My review "is limited to determining whether the ALJ used the proper legal standards and

10

found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

The findings of fact made by the ALJ are accorded deference so long as they are supported by substantial evidence. Id. Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriquez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion." Id. at 770. Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence on the record. Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

The ALJ follows a five-step sequential analysis for determining whether an applicant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The applicant bears the burden, through the

11

first four steps, of proving that her impairments preclude her from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Commissioner determines whether work that the claimant can do, despite her impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

### III.   ANALYSIS

Mitchell presents three arguments for why I should reverse the Commissioner's Decision: (1) the ALJ failed to properly weigh the opinions of her treating physician, Dr. Baker, and her physician's assistant, Ms. Diamond; (2) the ALJ erred in finding Mitchell's subjective complaints of pain not fully credible; and (3) the ALJ's RFC assessment was not supported by substantial evidence in the record. I agree with Mitchell that a remand is warranted on the basis of the ALJ's failure to properly account for the opinion evidence of record. In light of that outcome, I need not address her other arguments.

**A.   Law on Evaluating Opinion Evidence**

An ALJ must take into account the medical opinions in a claimant's case record when coming to a determination on disability. 20 C.F.R. § 404.1527(b)-(d). More weight should

generally be accorded to the opinion of medical sources who have examined the claimant, and more weight should generally be accorded to treating sources than non-treating sources.  20 C.F.R. § 404.1527(d)(1)-(2).  The rationale for giving more weight to treating sources is that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective . . . that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]"  20 C.F.R. § 404.1527(d)(2).

When the opinion of a treating physician is well supported and not inconsistent with other record evidence, it must be given controlling weight.  Id.; Social Security Ruling 96-2p, 1996 WL 374188 (July 2, 1996) [hereinafter SSR 96-2p].  In all other instances, a number of factors apply to determine how much weight should be given to an opinion.  20 C.F.R. § 404.1527(d)(2).  The factors to be considered include: the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the record evidence supporting the opinion; the consistency of the opinion with other record evidence; and whether the source is a specialist.  Id.

13

An ALJ must always provide "good reasons" in his decision for the weight accorded to a treating source's opinion.  Id.  When an ALJ's decision is not favorable to the claimant, the decision must contain reasons for discounting the treating source's opinion that are "sufficiently specific to make clear to any subsequent reviewers" both "the weight the adjudicator gave" to the opinion and "the reasons for that weight."  SSR 96-2p.

### B.  ALJ's Treatment of Opinion Evidence

After analyzing the credibility of Mitchell's statements about her symptoms by engaging in a fairly extensive review of Mitchell's medical history -- citing with specificity to various appointments, courses of medication, and notations in medical records -- the ALJ addressed the medical opinion evidence.  The ALJ's analysis of the opinion evidence is far sparser than his credibility analysis.  It reads, in its entirety:

> As for the opinion evidence, none of the claimant's treating sources have described the claimant as disabled.  Rather, while noting some limitations, all concur that the claimant remains capable of returning to light duty work activity.
>
> The undersigned also has considered the opinion of the State agency medical consultant at the initial level of the administrative review process.  While that opinion was reasonable based on the evidence contained in the record at that time, additional evidence received into the record at the hearing level

>     convinces the undersigned that the claimant was more
>     limited than originally thought.

Tr. 19 (internal citation omitted).

Mitchell argues that the ALJ is factually inaccurate in stating that her treating sources never described her as disabled. I agree. Mitchell's primary treating physician, Dr. Baker, never cleared Mitchell to work on a full-time basis, and her most recent evaluations limit Mitchell's work capacity to less than 40 hours per week. Her June 2009 opinion noted that Mitchell was only capable of working up to 20 hours per week, and her September 2009 opinion stated that Mitchell's combined ability to stand, sit, and walk in a workday was no greater than 5-6 hours.[4] Under the applicable guidelines, an individual who is unable to work a 40-hour workweek is considered disabled. See Social Security Ruling 96-8p, 1196 WL 374184 (July 2, 1996) (RFC is based on claimant's "ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**," where "'a regular and continuing basis' means

---

[4] In addition to Dr. Baker, Ms. Diamond, who also regularly treated Mitchell, opined that Mitchell would not be able to work a 40-hour workweek. As a physician's assistant, Ms. Diamond is not an acceptable medical source under 20 C.F.R. 404.1513(a). Although her viewpoint could be given less weight on that basis, the ALJ was nonetheless obliged to consider her opinion. Social Security Ruling 06-03p, 2006 WL 2329939 (Aug. 9, 2006). The failure to address Ms. Diamond's contrary viewpoint constitutes further error.

15

8 hours a day, for 5 days a week, or an equivalent work schedule").

Given the discrepancy between his determination and that of Dr. Baker, the ALJ was required to give specific reasons for discounting Dr. Baker's opinion on Mitchell's ability to work full-time.  See 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Apparently failing to recognize the existence of a discrepancy, however, the ALJ did not attempt to reconcile his own conclusions with the contrary portions of Dr. Baker's opinion. I cannot affirm a decision that is based on a misinterpretation of record evidence and that is bereft of the explanation necessary to resolve a conflict in the evidence.  See Chater, 172 F.3d at 35 ("The ALJ's findings of fact . . . are not conclusive when derived by ignoring evidence[.]"); Dube v. Astrue, 781 F. Supp. 2d 27, 34 (D.N.H. 2011) (reversing and remanding Commissioner's decision "because the ALJ did not address contradictory aspects of the medical opinion offered").

The Commissioner's responses are unavailing.  For example, the Commissioner notes that "opinions from acceptable medical sources may be discounted for good reason without slavish discussion of all potentially applicable factors."  Def.'s Mem. Supp. Mot. to Aff. at 5, Doc. No. 13-1 (citing Golfieri v. Barnahart, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6,

2006)).  Whether or not "slavish discussion" is required, in this case the ALJ omitted all explanation and did not reference a single one of the factors enumerated in 20 C.F.R. § 404.1527(d)(2).  Moreover, he did not even indicate a recognition that his conclusion was at odds with the opinion of Dr. Baker.

   The Commissioner also contends that the decision should be affirmed in light of the ALJ's discussion of record evidence in other portions of his opinion.  The ALJ demonstrated a familiarity with certain portions of Dr. Baker's treatment notes and based his decision on evidence that was inconsistent with the opinion of Dr. Baker.  The ALJ's broader discussion, however, did not abrogate his duty to provide specific reasons for discounting the medical opinion of Mitchell's longstanding treating physician.  See SSR 96-2p (ALJ's explanation must be "sufficiently specific to make clear to any subsequent reviewers . . . the reasons" why he discounted the medical opinion).

   Although it may well be that the record contains sufficient evidence to support the ALJ's determination, the ALJ failed to recognize that Dr. Baker's opinion differed from his and failed to adequately explain why Dr. Baker's opinion did not carry the day.  I must reverse the Commissioner's decision and remand for further proceedings.

## IV. CONCLUSION

For the foregoing reasons, I deny the Commissioner's motion to affirm (Doc. No. 13) and grant Mitchell's motion to reverse (Doc. No. 11). Pursuant to 42 U.S.C. § 405(g), I remand this case to the Social Security Administration for further proceedings consistent with this decision. The clerk is directed to enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

March 13, 2012

cc: Raymond J. Kelly, Esq.
T. David Plourde, Esq.